LimeCoral, Ltd. v. CareerBuilder, Inc. Mr. Merrill. Good morning. May it please the Court. I'm Courtland Merrill on behalf of Plaintiff Appellant LimeCoral, Ltd. In this case, the District Court erred in granting summary judgment to Defendant CareerBuilder on its applied license defense. An applied license is an affirmative defense to a copyright infringement claim, as this Court recently held in the Muhammad Ali v. First Call case, which was cited by the District Court. In this case, in the record, there's at least some evidence that a jury could find that LimeCoral conditioned use of the copyrighted media files on CareerBuilder's payment of ongoing fees. You know, Mr. Merrill, it seems to me, okay, that at the end of the day, the only evidence supporting the notion that there was an agreement to pay LimeCoral a fee for every renewal, even when no additional design work was required, is Mr. Schoenholtz's testimony that he reached such an agreement with Donahue & Miller during the negotiations culminating in the 2008 contract. But no such agreement is reflected in the 2008 contract itself, and the agreement, of course, expired after six months. Given the various bits of other evidence contradicting the existence of such a fee agreement, how can we say that this presents a fact question? Your Honor, we agree that that is the evidence in the record that we're relying upon. And the 2008 agreement that expired is silent as to the payment of fees, and specifically that's sections 2.4 and 2.6. And so what you have is a situation where there is a written agreement, and under that written agreement, which did not speak to the amount of fees, LimeCoral was entitled to receive ongoing fee payments. This is when there are no revisions with something that's just status quo? Because I'm a little confused about exactly when there are adjustments and revisions, and they sort of pay a fee, and when they go with as is, they haven't been paying any fee. Is that too simple? I think it's pretty close, Your Honor. If a customer renewed, it had to pay a career builder customer, renewed its contract, it would pay a career builder $10,000. Career builder, according to Mr. Shainold's testimony, would then pay LimeCoral $3,000. And when the customer renewed again year after year, each time, the customer would pay $10,000 or sometimes more, sometimes up to $40,000. And each time, LimeCoral was entitled to a fee, whether it created an entirely new work or it merely did just a label or nothing. And it was a rare instance when they did nothing, because if a customer is going to pay $10,000, they want to at least have something, and these are job postings. So year after year, career builder made a lot of money off this product, and Mr. Shainold's… But there is no evidence that supports the notion that career builders licensed to use the designs created by LimeCoral were subject to an agreement that career builder pay LimeCoral a renewal fee every time a customer just renewed a job posting. And Mr. Shainold seems to have been totally unable to identify an occasion on which the parties had entered into such an agreement. And if you look at the parties' course of dealing, it's inconsistent with such an agreement. So, you know, Judge Duryegan's alternative reason is that Mr. Shainold had waived any right to enforce any such agreement by his conduct. Well, as to the point, Mr. Shainold's testimony is that there was an agreement. That agreement was corroborated. If you look at, for example, Exhibit 1 is the email at the beginning of the relationship. It was negotiated among Blake Miller and Brian Donohue and Mr. Shainold's. There's no… Whether they…if there's contrary evidence, that testimony should be taken and given credence at the summary judgment stage. They then…the parties then enter into…let the agreement expire and they continue on their course of dealings. And there is evidence in the record where Mr. Shainold has paid a full renewal fee when he provided an almost limited or no work. And he was, as he testified to, he wasn't aware until 2014 when the parties' agreement began to deteriorate that he learned that there were certain situations when the career builder customer would renew and not pay a renewal agreement. And as to the waiver argument, he did not…well, Mr. Shainold and Lime Coral did not ask for payments during the course of their dealings up until 2014. At that point in time, he revoked the agreement and demanded that they pay royalty…pay renewal fees if they were not going to continue to provide him the $35,000 of work each month that he had in fact received and had been promised. And… Well, he seems to think he's the only one that had such agreement. There was. That 2008 agreement expired after six months. The parties continued their working relationship but without a written contract. And I…you know, there also seems to be a little bit of bad faith in there with some of Mr. Schoenholtz's comments and emails, etc. The district court…  One is in the email to a friend and colleague, another subcontractor, in which he stated that he planned to go Monte Cristo on career builder. There's another email, we recognize this in the record, in which he said he's going to go in for the kill. And the evidence in the record also shows that Mr. Schoenholtz was saying similar things to career builder. He testified that in 2012 he told Brian Donahue, the senior executive who has worked on this project, that he would sue career builder for copyright infringement. Mr. Schoenholtz told another employee, Lauren Morris, in 2014, that he would sue career builder for copyright infringement. Mr. Schoenholtz… Why is there a case or controversy as to Lime Coral's ownership of the copyright? Well, there is no case. It's undisputed that Lime Coral owns the copyrights to the work. The first defense by the defendants was that they own the copyright. So we moved for partial summary judgment on the issue of ownership. The defense that was raised on summary judgment by the defendants was that there's a non-exclusive implied license, and the district court found that issue as denied summary judgment. And we asked that this court enter summary judgment that copyright ownership does lie with Lime Coral. But as to the issue of waiver that the district court relied upon in part, it can't be a waiver when Mr. Schoenholtz is telling career builder that they, in fact, infringe his copyrights if they continue to use his works. The situation, what happened here, is that there's a situation where Lime Coral owned the copyright and career builder continued to use it in the face of Lime Coral telling them that he was the copyright owner and that he would sue them. The testimony that the district court relied upon is evidence that career builder could use to impeach or attack the credibility of Mr. Schoenholtz at trial. But if the jury believes Mr. Schoenholtz in his testimony, and it's an implied license with a burden on career builder, if they believe that testimony, then the jury could find that the license was a non-exclusive license conditioned on ongoing payments. And there doesn't seem to be a dispute from career builder. If it's, in fact, an implied license that's conditioned on these payments, then it's revocable under this court's decision in Walrath. And we have an appeal in the district court. Lime Coral made a claim for renewal payments all the way back to 2008. We've abandoned that on appeal, and we're only asking for renewal payments from the date of revocation, which is 2014, onward in use after the revocation. How much are those renewal payments? So the renewal payments for the works are approximately $3,000. Some of the works, it's $1,500. I don't even understand the product, I hate to say it. Go ahead, just explain that if you could shortly. It's essentially pictures, graphic designs, and combined with HTML, language that creates a website. So it's text and graphics that causes a website to look and feel like a website that you would see when you go to the careerbuilder.com website. That's what the product is, and it's been copyrighted. The Copyright Office, we've registered the copyrights to it. And if it's used year-to-year without change, they still should pay a fee? Yes, that was the agreement. Or the district court decided that this agreement, what Mr. Shainholz testified to, essentially the district court found that it was incredible because this would put, in the words of the district court, a career builder in such a horrible position, if you will. If CareerBuilder did not want to pay a renewal fee, they could make the work itself without using Mr. Shainholz's work. They have a 70% at least profit margin. So, for example, when the customer comes to CareerBuilder and wants to use exactly the same work, and CareerBuilder doesn't want to use Mr. Shainholz's design, the customer paying $10,000, CareerBuilder could take $3,000 of that, have another designer recreate the work under a written agreement that provided copyright ownership to CareerBuilder, and CareerBuilder would make $7,000 in that instance. And that's why it's not incredible for Mr. Shainholz to testify to this agreement. And it's not incredible for a jury to find that that was, in fact, the agreement had between the parties. And so... What kind of a contract is actually written? The contract that was written is the 2008 agreement. Is that a six-month contract? It's a six-month contract, and it provided and guaranteed CareerBuilder with additional work. I'm sorry, guaranteed Lime Coral with 50% of the work. And when that agreement expired, Mr. Shainholz wanted to enter into another agreement that had additional, that continued on that guarantee. CareerBuilder did not want to do so. And as a result, the parties ended up not having a written agreement. A couple of times in the record, CareerBuilder asked Mr. Shainholz to sign another agreement. He did not do so. And he testified one of his problems was he didn't get the guaranteed level of work. Had they wanted to get the copyright ownership and not have to deal with this situation today, they could have hired a different... Well, they assume they don't get any work anymore. He does not. Once he revoked the agreement, CareerBuilder no longer provided him any work. So there isn't really anything going on between them other than the continued use, then. That's exactly correct. And that's why Mr. Shainholz revoked the copyright, is because... I can understand why he doesn't want to give him any more customers. I guess that's what you're referring to. Understood. Unless the court has any additional questions, I will reserve the rest of my time for rebuttal. Thank you, Counselor. Mr. Bull. May it please the Court. I'm Kevin May on behalf of CareerBuilder. The undisputed facts in this case establish that CareerBuilder's rights to use these designs were not limited to one-year increments followed by annual renewal fees, but were ongoing without any additional payment required. And as Judge Roebner pointed out, and Counsel just conceded, they have one piece of evidence that they purport to rely on, and that was Mr. Shainholz's declaration. I'd like to address that straightaway. Mr. Shainholz testified in his deposition that he had no memory of a decade that its rights to use these works would be limited to one-year increments unless it paid annual renewal fees. Months later, in response to summary judgment, Mr. Shainholz came forward with a declaration that is directly contrary to that deposition testimony.  Mr. Shainholz's declaration cannot create a genuine issue of material fact in this case because the purported oral agreement he's talking about in his declaration would have been superseded by the party's written agreement. It was the six-month agreement that was spoken about earlier. That was at the very beginning of the party's relationship, and Mr. Shainholz agrees that that's when the oral contract purportedly occurred. Now, this 2008 agreement was fully integrated. It had an integration clause. Section 8.15 said that it constitutes the entire agreement between the parties, that it supersedes any previous written or oral agreement, and that it may not be changed orally. This means that Lime Coral cannot assert an oral agreement as a matter of law. Was it just six months, the original agreement? The original agreement did last six months, but the important thing to think about in terms of that contract having an integration clause is that it superseded the oral agreement that Mr. Shainholz is talking about in his declaration, and that oral agreement, if it was superseded by a written agreement, didn't spring to life again six months later after the six-month agreement expired and the parties proceeded on their way to do business together without a written agreement. If it was superseded, Lime Coral cannot rely on it to survive summary judgment. The reason why it's superseded is that it's directly inconsistent with the written agreement the parties came to. So you're just saying there's no oral agreement because it's not written, I guess. I'm confused at what the subsequent relationship is. Yeah, well, the way the relationship went down is the parties talked about having a relationship. Lime Coral said CareerBuilder would get full ownership of the IP rights. They entered into a written agreement that was short, six months, where CareerBuilder would get all the IP rights, ongoing rights, ownership rights, full rights. The agreement ended after six months, and the parties spoke, and it's undisputed that they agreed they wanted their relationship to continue. And Lime Coral admitted at deposition it didn't recall any change that the parties discussed to CareerBuilder's rights to use the designs. And so then the parties moved forward for another five years and thousands of projects without a written agreement. The law says that in that instance, CareerBuilder is entitled to an implied license. And we all agree that CareerBuilder was entitled to an implied license. So CareerBuilder has met its burden of establishing its affirmative defense. Then Lime Coral comes in and says, okay, yeah, you had an implied license, but it was limited by our oral contract. So this case really boils down to can Lime Coral come forward with any evidence from which a reasonable jury can determine that the parties entered into this oral contract? And what I'm saying is to you. So in its reply brief, in its reply brief, Lime Coral makes the point that there was no Schedule A attached to the contract. And that's where the agreement to pay a renewal fee would have been documented. Can you please address that point and the related argument that the 2008 agreement was only partially integrated given the missing Schedule A? Yes, Your Honor. I think it's important when considering the fact that Schedule A was missing from the final contract to focus on the language of Section 2.6 of the contract because that's where Schedule A is introduced. It says, career builder shall pay contractor for final product delivery per the fees contained in Schedule A. And we're missing Schedule A. We have to ask ourselves, okay, what information are we missing? The language here is very clear. We're merely missing the amount contractor would pay, quote, for final delivery, unquote. That's important because it's a very narrow fact that was missing from this contract. It's not about what career builder might pay years later, three years, four years, five years later. It's solely what career builder would pay for final product delivery. So that, Your Honor, I would agree. There's one open question in this contract, but it's merely what they would pay when they receive delivery of the product. And if Lime Coral was suggesting an oral contract on that amount, like, oh, it wasn't $3,000 that we paid when we delivered it. It was $3,500 or something like that. They might be able to argue an oral contract. But what they're suggesting is an oral contract that is far different and far broader. My point being that to the extent there's an opening in this contract, it's a very narrow opening that relates solely to the amount paid upon receipt of the product. And it's a barely open window that they're trying to drive this oral contract through, and there's not enough room. Because their oral contract is quite different than what career builder would pay upon final product delivery. And it's also important to note that it's not just Section 2.6 of the agreement. It's also Section 4. That's the ownership section, and that's where the contract said, career builder, you're going to own this intellectual property. And that in and of itself, granting somebody ownership of copyright is in and of itself directly contrary to the notion that the parties had agreed to limit career builder's rights to one-year increments unless it paid additional fees. When you grant ownership, you're granting everything forever and for always. And you don't grant ownership if you want to limit somebody's rights to one-year increments unless they pay for the next year and the next year. That's a license agreement. We've all seen those. You pay for a one-year license, you pay another. But this wasn't. This was an assignment of copyright. Would it go on in perpetuity just as is with no more agreement? Yeah, career builder's rights would, yes. Career builder's rights would because all this was was as simple as any other transaction you have every day. You ask somebody to do a project for you, they do it, you agree on a price, they pay it, you walk away. You never have to speak to them again. Now these guys did lots of those. And sometimes career builder asked Lime Coral to make revisions and they paid them, they worked that out on an ad hoc basis. But revisions have nothing to do with this case because this is a case about what career builder's obligations were when Lime Coral didn't do revisions. Just another year of career builder using the product that it had purchased. It's as simple as that. Well, the only way I can think of something simple is if you buy a car and you keep the car and don't get any more repairs or whatever. This is very similar. Well, this thing must be, is it obsolete or is it just current forever? Seems to me with this kind of product you've got to constantly update it and you have to constantly make revisions. Somebody has to. It's really not as complicated as it might seem. These are just graphic designs. Just to answer your question earlier about what are we talking about here, career builder has a website where employers can post their job openings. And Lime Coral only got involved when the employer wanted to enhance the appearance of its job posting and pay career builder a little bit more to stand out, have their brand, have their look, their logo, their colors. So they'd pay career builder a little bit more and career builder would hire Lime Coral. Do these computer graphics for us. We're talking about a lot of different employers as time goes on? Career builders and customers, yes. They have lots of customers and there were lots of these projects. And career builder would look to Lime Coral as a graphic designer and lots of other graphic designers. But the important point here is that it comes down to did these parties enter into an oral agreement? And Mr. Shainholz's declaration, even drawing all inferences in Lime Coral's favor cannot create a genuine issue of material fact because that purported oral agreement would have been superseded by the party's written agreement. In addition, there's a whole host of undisputed facts that establish that the parties didn't enter into this contract to limit career builder's rights to one-year terms. Well, apparently career builder can get along without Lime Coral now. Isn't that right? We can and we do. I mean that's part of why career builder was leaving Lime Coral. Lime Coral was happy going along and getting its $3,000 until career builder's business changed and didn't need them anymore. And then he pulled out this card that he'd been holding in his pocket and that's what some of those emails were about. Apparently he'd been planning for three or four years. If career builder ever stops making me happy by giving me the amount of I'm going to spring this on them. He was laying in the weeds. Apparently there's no relationship anymore at this point. There's no relationship. Correct. There's no relationship. But there's a whole host of undisputed facts that are directly contrary to the notion that these parties had this oral agreement. Initial discussions said that Lime Coral would give career builder ownership of all intellectual property rights to be used in Lime Coral's words not just for the present campaign but for future campaigns. He was referring to use in the future. That's directly contrary to an agreement to limit career builder's rights to one-year increments. There's a 2008 agreement which we've already discussed, gave full ownership, made no mention of annual renewal fees and that section 2.6 that we looked at doesn't open the door to argue an oral agreement of the kind they're asserting because it's specifically limited to the fee that would be paid upon delivery of the product. When the agreement expired as we discussed, the party said they wanted their relationship to continue and they didn't discuss changing it at all. There's a course of conduct here that's six years and more than 2,000 projects long where Lime Coral was never paid an annual renewal fee and never asked for an annual renewal fee. Without no continuing relationship, what would be the benefit, if any, to Lime Coral? It was hoping for a big payday. What happened when the relationship broke down? Lime Coral wrote to CareerBuilder and said, hey, you're still using my designs and you don't own them and I do and I'm revoking your rights unless you pay me X dollars. That's the holding CareerBuilder hostage point that gets discussed in the case law about why we have these implied licenses to protect purchasers of copyrighted products that didn't get a written assignment. And so they said, aha, and they sprung it on them. But here's a key fact that's undisputed. Lime Coral, during the six years and more than 2,000 projects, wasn't even checking the CareerBuilder website to see whether CareerBuilder was using these projects for more than one year. They can provide no basis for why they wouldn't have, as their owner testified, take a couple of minutes to look at the publicly accessible website that he worked on every day. Why, if he truly had a contract with CareerBuilder, that their rights were limited to one year and he was entitled to annual renewal fees if they used it for more than one year, why wouldn't he at least look at the website and see whether they were being used for more than one year? No one wouldn't behave that way. Well, I guess the way you're saying it, that's not the case. It's not the same thing. It's something different, evolved into something completely different, maybe only remotely similar. I don't know what the answer is. It sounds to me like obviously somebody needs a contract. What was really happening, Your Honor, was he was happy with the way things were going, getting his $3,000 one-time payment, getting this work. He was fine. He wasn't looking for that $3,000 annual annuity that he's now claiming. Until the relationship broke down, there was nothing left, and he says, aha, I'm going to go after a big windfall here. Has CareerBuilder paid more than $3,000 since that initial agreement? Over time, to lime coral. I think that the answer is that they typically paid $3,000, perhaps not every time. When they had revisions? So when they had revisions, revisions were dealt with on an ad hoc basis, and the CareerBuilder and lime coral would work that out. Sometimes lime coral got paid nothing. For whatever reason, they decided this one isn't going to get paid on. But the salient fact there is that every invoice for revisions that lime coral ever submitted to CareerBuilder has been fully paid, and they've dropped that issue. But revisions are different from renewals. This appeal is just about renewals, which is CareerBuilder using that product for another year without asking for any revisions whatsoever. Okay. Thank you. Thank you, Counselor. You have two minutes. Let me address the bad faith declaration. His deposition testimony is inconsistent within the deposition itself. I believe it's page 165 of his transcript where he says he was paid renewals and he had an agreement with Blake Miller. Later he says he can't remember an instance. The jury can reconcile that with his own direct testimony in his declaration that he was talking about. There wasn't a discussion about it after the 2008 agreement expired. The agreement to pay renewals was entered into at the time of the 2008 agreement. Now, I want to address the superseded issue, that the 2008 agreement was integrated. 2.4 and 2.6 of that agreement address fees, and they talk about a Schedule A. This agreement, there was no Schedule A, and the parties did not deal with the payment of fees in this agreement. They just simply didn't. There's a host of evidence in the record talking about payments of $3,000 or $10,000. It just isn't part of this agreement. The agreement was partially integrated, and the issues of fees is not barred by this provision of the agreement. And when this agreement expired, the ownership rights of CareerBuilder ended. They can't rely upon this agreement to show an intent of an ownership. The obligations to pay LimeCoral, to give LimeCoral 50% of the work expired. The agreement expired, but what remained was an obligation to pay renewals if they wanted to work with LimeCoral. Unless your court has any questions, my time is up, and I will conclude. Thank you. Thanks to both counsel, and the case is taken under advisement.